In our opinion, this case was correctly decided below.

The judgment is affirmed.

177 La. 728

### McWILLIAMS v. HARPER.

### No. 31677.

Supreme Court of Louisiana.

May 29, 1933.

Rehearing Denied July 7, 1933.

Murff & Perkins, of Shreveport, for appellant.

Isaac Abramson, of Shreveport, for appellee.

OVERTON, Justice.

On October 20, 1927, plaintiff and defendant entered into a contract of lease, reading as follows:

"George A. Harper, lessor, agrees to lease to T. F. McWilliams, lessee, the triangular plot of ground and improvements, located on the north side of the road, on Red Schute Hill, plot consisting of not more than two (2) acres. Lease to run for five (5) years from date. Rent to be seventeen dollars ($17) per month, payable in advance. Mr. McWilliams agrees to return buildings and other improvements made in good condition at the expiration of lease. If the buildings or grounds are subleased, the lessee must meet with the approval of the lessor."

This contract, without proof of its authenticity, was admitted to registry; the registry being made in the mortgage records of Bossier parish.

Plaintiff took possession of the property leased by him, made improvements on it, used one of the buildings on it for a small grocery store and also as a filling station, and devoted a part of the land to the growing of truck. He and his wife occupied a part of the garage building as a dwelling.

In 1929, preparations were being made to hard-surface and improve the Shreveport-Minden highway. The police jury of Bossier parish concluded to run the old road, which ran immediately in front of the store and filling station, a little farther north, and caused a survey to be made with that end in view. The survey thus made ran through the store building and filling station. Defendant objected to the new route, since it would destroy his property. An effort was made by the police jury to purchase the right of way surveyed, but the price named by defendant was more than the police jury was willing to pay. An expropriation suit was then threatened. At defendant's suggestion, a new survey was made north of the store. This new survey was made in view of defendant's promise to dedicate the right of way upon condition that the police jury would place the store and all outhouses on the property in the same position with reference to the new road as they were then occupying with reference to the old road, except that all houses should face north instead of south. On the completion of the survey and the acceptance by the police jury of defendant's offer, the act of dedication, reciting the foregoing condition, was passed and recorded. The police jury, on the completion of the highway, turned the buildings around as promised.

The new route reduced the area of the property appreciably and cut off a part of plaintiff's truck patch, and, as said above, necessitated the moving of the buildings around, so as to face the new road.

Plaintiff was not consulted about the making of the dedication, nor was his consent obtained for the new route, so far as that route might affect his rights in the leased premises, nor were any legal proceedings had by the police jury to obtain such rights. Although it is disputed, we think the record fairly shows that plaintiff protested to defendant against the change in the property.

A few weeks after the dedication, plaintiff, having closed out his business, accepted a position in a restaurant at Shreveport at $20 a week, working at night and returning each morning to the leased premises, where he and his wife continued to live until September, 1929. He gives as his reason for closing out his business and accepting the position in Shreveport that the act of constructing the road would so interfere with his business that he could not conduct it save at a great loss. Therefore he closed out the business before the actual construction of the road, in the neighborhood of the property, began.

On January 11, 1930, plaintiff brought this suit, alleging that defendant, by making the dedication in disregard of his rights, breached and abrogated the contract of lease and caused his eviction, for which he is entitled to damages. The damages sued for consist of the value of his improvements, the value of the lease above the agreed rental, and for loss of profits for the unexpired term of the lease.

On the trial of the case, there was judgment for plaintiff for only $87, which the court found to be the increased rental value of the property. On the demand for the value of the improvements claimed to have been made by plaintiff, there was judgment of nonsuit. On the claim for loss of profits, plaintiff's demand was rejected absolutely. Plaintiff, in his answer to the appeal, has asked that the judgment be increased to $3,000.

Defendant has presented in his brief an exception of no cause or right of action, which was overruled in the trial court. A decision on the merits will decide the exception, as the same facts and law are involved in the consideration of both.

Defendant presents the argument that the lease, being of record, when the dedication was made, the police jury, by operation of law, accepted the dedication subject to it, and

that whatever wrong may have been done plaintiff, in ignoring his lease, was done, not by defendant, since it had a right to dedicate its property, whether leased or not, but by the police jury. As to this position, it is not likely that the registry of the lease, in this instance, served as notice to any one, for, instead of the lease being recorded in the conveyance records, it was recorded in the mortgage records. Summers & Brannins v. Clark, 30 La. Ann. 436.

Besides the foregoing observation, the description of the property, contained in the lease, is so vague, indefinite, and uncertain that it is doubtful, no matter where the lease was recorded, whether its registry would serve as notice to any third person.

■ However, these considerations are of no importance here, as we think that the decision of the case is not dependent upon them. The foregoing argument by defendant, which provoked them, leads up to and enters into his discussion on the proper interpretation and application of article 2703 of the Civil Code, declaring that the lessor is not bound to guarantee the lessee against disturbances caused by persons not claiming any right to the premises, but that, in such case, the right of action is against the person causing the disturbance, which, according to defendant's position, is the police jury alone, and not defendant. Defendant also cites the case of Reynolds v. Egan, 123 La. 294, 315, 48 So. 940, in support of his position. We think, however, that neither the case cited nor the article of the Code has any application here, under the facts of the case, as we find them. Defendant does not occupy the position of a third person in whatever wrong was done plaintiff. He made the dedication, without reference to plaintiff's right to the use of the property, and without consulting him. He had every reason to know at the time that the construction of the road would not be delayed until the expiration of the lease which still had several years to run. He acquiesced in the construction of the road, without regard to plaintiff's rights, and did the little he could do in furtherance of its prompt construction, as, for instance, the permission granted by him as to the removal of dirt.

■ Our conclusion is that defendant, stood, at least, as a participator in the wrong done. Hence, we have reached the conclusion that the article and the decision cited are not applicable, and that defendant, by the course pursued by him, has rendered himself liable. Plaintiff is not to be blamed for closing out his business before the work of actual construction began, for it was manifest that the construction would soon commence.

As to the correctness of the judgment for the quantum of damages allowed, which, as said, was only $87, we find no error against

either plaintiff or defendant in the allowance. There is evidence in the record showing that the lease had increased somewhat in value since it was granted, sufficiently so to justify the allowance. As to the judgment nonsuiting the demand for the improvements, that too is correct. The evidence is too vague to justify the allowance of that demand. The judgment rejecting the demand for loss of profits is also correct. That demand is far from proved, and is too speculative to allow or even to nonsuit.

The judgment is affirmed.