191 So.2d 658 (1966)
Andy C. PAPPAS et al., Plaintiffs-Appellants,
v.
AETNA CASUALTY AND SURETY COMPANY et al., Defendants-Appellees.
No. 10680.
Court of Appeal of Louisiana, Second Circuit.
October 31, 1966.
Donald R. Miller, Shreveport, for appellants.
Lunn, Irion, Switzer, Trichel & Johnson, Shreveport, for appellees.
Before GLADNEY, AYRES and BOLIN, JJ.
*659 GLADNEY, Judge.
Andy C. Pappas, his wife, Mrs. Ilo Pappas, and Tommy Pappas, their son, brought this action against Bennie R. Hubbert and Aetna Casualty and Surety Company, the liability insurer of the Pappas automobile. Recovery of damages from the insurer is sought under the terms of the "uninsured motorist" clause of the policy. Aetna filed a peremptory exception of no right of action which was sustained by the trial court and plaintiffs have appealed.
The damages sustained by petitioners occurred on April 27, 1965, at which time Tommy Pappas was driving his mother in the insured automobile when it was struck by another vehicle owned and operated by one Bennie R. Hubbert, the accident occurring in the 3900 block of Linwood Avenue in Shreveport. It is alleged that the accident was due solely to the negligence of Hubbert and that the Hubbert automobile was an uninsured vehicle. As a result of the collision the occupants of the Pappas automobile sustained personal injuries and the Pappas automobile was damaged. Although Hubbert was made a party defendant as a tort-feasor, the return of the Sheriff shows that he was never found and never cited and that the sole defendant before the trial court was Aetna.
The basis for the exception of no right of action is the refusal of plaintiffs to furnish to Aetna any medical reports of physicians who may have treated or examined them, on the asserted ground that such reports were confidential and privileged, and on the further ground that the plaintiffs refused and declined to submit themselves for examinations by physicians selected by Aetna. It was the contention of the exceptor that plaintiffs' action was "legally nonexistent" and barred by the effect of law under the provisions of C.C.P. Art. 923.
The policy in question was issued to Andy Pappas on February 15, 1965 and was in effect at the time of the accident. The coverage provides that the insurer shall pay all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injuries sustained in an accident in which the insured automobile was involved. The unqualified word "insured" means not only the named insured in the policy, who is Andy Pappas, but any relative of the named insured and any other persons while occupying the insured automobile. It cannot be questioned, therefore, that Mrs. Pappas and Tommy Pappas are covered as insureds under the policy. The policy, inter alia, provides that the insured or any other person making claim under the provisions of the policy pertaining to uninsured motorists shall furnish to the insurance company written proof of claim including full particulars of the nature and extent of injuries, treatment and other details which might enter into a determination of the amount which might be due, and that such insured shall submit to physical examinations by physicians selected by the insurer and shall upon request execute authorizations for the company to obtain medical reports and copies of hospital and other records from the insured. Specifically, the policy declares:
"9. Proof of Claim; Medical Reports Part IV

* * * * * *
"The insured person shall submit to physical examinations by physicians selected by the Company when and as often as the Company may reasonably require and he, or in the event of his incapacity his legal representative, or in the event of his death his legal representative or the person or persons entitled to sue therefor, shall upon each request from the Company execute authorization to enable the Company to obtain medical reports and copies of records."
Upon trial of the exception Aetna Casualty and Surety Company called as its witness, Herbert Green, its claim representative, whose testimony, together with *660 correspondence between Green and the attorney for plaintiffs, conclusively established that the insured claimants had refused to submit to a physical examination and had declined to give full medical information to the insurer.
The position taken by plaintiffs' counsel is that his clients do not have to submit to a physical and mental examination by defendant's medical doctors, except in accordance with C.C.P. Arts. 1493 and 1453; that medical memoranda are the work products of the plaintiff and are confidential to the plaintiff and are made available to the opposing prospective parties litigant only upon proper order from the court. Further, it is contended that the instant liability insurance policy was written under the provisions of LSA-R.S. 22:1406, subd. D(1) and is a public liability policy under which recovery is based upon principles of tort law. In presenting the claim to Aetna counsel for plaintiffs give the following information:

* * * * * *
"Ilo and Tommy Pappas are of the Christian Science faith; they have undergone treatment with a Christian Science practitioner, whose name is Mrs. Mildred Herring. As you know, they do not beleive in some of the physical medicines to which most of us subscribe. This in no way lessens their rights to recover for the damages they have incurred."
Primarily appellants' counsel argues that the provisions of LSA-R.S. 22:1406, subd. D(1) are mandatory and are for the protection of the insured person whose rights to recover are based on the principles of duty, faults and causation and therefore his rights should be considered as arising as if under a public liability policy. The section of the insurance code above referred to requires automobile liability insurance to provide coverage for not less than the limits described in The Motor Vehicle Safety Responsibility Law of Louisiana "* * * for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury * * * resulting therefrom; provided, however, that the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage. * * *" LSA-R.S. 22:655 states in part:
"* * * Nothing contained in this Section shall be construed to affect the provisions of the policy or contract if the same are not in violation of the laws of this state. It is the intent of this Section that any action brought hereunder shall be subject to all of the lawful conditions of the policy or contract and the defenses which could be urged by the insurer to a direct action brought by the insured, provided the terms and conditions of such policy or contracts are not in violation of the laws of this state.
"It is also the intent of this Section that all liability policies within their terms and limits are executed for the benefit of all injured persons, his or her survivors or heirs, to whom the insured is liable; and that it is the purpose of all liability policies to give protection and coverage to all insureds, whether they are named insured or additional insured under the omnibus clause, for any legal liability said insured may have as or for a tortfeasor within the terms and limits of said policy." * * *
Relying upon the foregoing provisions of the insurance code and the case of Mangrum v. Powell, La.App., 181 So.2d 400, which interpreted LSA-C.C.P. Arts. 1452 and 1491, the thrust of counsel's argument is that plaintiffs' action is one in tort and is not in contract; and that liability arises under LSA-C.C.P. Art. 2315 and not by reason of the contractual provisions contained in the policy.
Subject to the statutory limitations, a policy of insurance is a contract between the parties and as between them it constitutes the law of the case. The rules of *661 its interpretation are the same as for agreements generally and where the language is clear and expresses the intention of the parties, a contract will be enforced by the court as written. LSA-C.C. Arts. 1901, 1945, 1946. Nyman v. Monteleone-Iberville Garage, 211 La. 375, 30 So.2d 123 (1947); Oil Well Supply Company v. New York Life Insurance Company, 214 La. 772, 38 So.2d 777 (1949); Albritton v. Fireman's Fund Insurance Company, 224 La. 522, 70 So.2d 111 (1954); King v. Mason, La.App., 95 So.2d 705 (2nd Cir. 1957); Kendrick v. C. N. Mason Company, 234 La. 271, 99 So.2d 108 (1958); Velotta v. Western Fire Insurance Company, La.App., 121 So.2d 857 (2nd Cir. 1960).
The above quoted provisions of LSA-R.S. 22:655 and 1406, subd. D(1) do not support counsel's contention that an action under the uninsured motorist clause must be characterized as one in tort. If plaintiffs' action is indeed one in tort and not on contract, Mangrum v. Powell would be appropriate and defendant would be governed by its ruling. Therein we held the medical reports of physicians who examined an insured plaintiff were reports prepared "in anticipation of litigation or in preparation for trial" and constituted written "conclusions, opinions, or theories of an attorney or expert" within the statutes restricting discovery. In that case the rights of the plaintiff were not circumscribed by the contractual provisions of the policy issued by his insurer.
We are unable to find any statutory restrictions affecting the validity of any of the provisions of the policy relied upon by the insurer and in the absence of such the contract is binding upon all parties thereto and must be applied by the court as written. LSA-C.C. Art. 1945. Under the very plain terms of the policy plaintiffs are required to submit medical reports to their insuring company and also submit to physical examination by physicians selected by the insurance company. The plaintiffs therefore have failed to comply with the covenants of the contract which lawfully bind them by their consent thereto.
We are of the opinion that the rights of plaintiffs should not be irrevocably prejudiced by their refusal to comply with the policy conditions and in order to preserve the rights of plaintiffs to comply with the terms of the policy the judgment of the trial court will be modified by dismissing plaintiffs' suit, as of nonsuit, and it is so ordered; plaintiffs to pay all costs of this appeal.