482 So.2d 735 (1985)
Beverly J. DORSEY
v.
BOARD OF TRUSTEES, STATE EMPLOYEES GROUP BENEFITS PROGRAM.
No. CA 84 1173.
Court of Appeal of Louisiana, First Circuit.
December 26, 1985.
Rehearing Denied February 7, 1986.
Writs Denied April 11, 1986.
*736 Milton Osborne, Jr., Baton Rouge, for plaintiff-appellee Beverly J. Dorsey.
Tommy D. Teague, Richard N. Burtt, Baton Rouge, for defendant-appellant Bd. of Trustees, State Employees Group Benefits Program.
Before LOTTINGER, COLE and CRAIN, JJ.
COLE, Judge.
The primary issue presented in this appeal is whether the claimed medical expenses were rendered in connection with an illness or injury for which the insured had received treatment, services or prescribed drugs during the twelve month period preceding the effective date of his insurance coverage.
Plaintiff, Beverly J. Dorsey, was employed by the State of Louisiana in February of 1981. She initially enrolled in the State Employees Group Benefits Program (Group Benefits Program) on July 10, 1981, but cancelled this coverage on December 11, 1981. On July 28, 1982, Mrs. Dorsey re-applied for family coverage for herself, her husband, John Dorsey, Sr., and their son, John Dorsey III. On this same date she also completed a statement of health form, which she submitted with her application. On this form she noted her husband was under treatment for hypertension.
The parties stipulated the effective date of the renewed coverage was October 1, 1982. Since Mrs. Dorsey's enrollment in the Group Benefits Program occurred more than thirty days after the date of her employment, this coverage was subject to an exclusionary clause for pre-existing conditions. On the date she submitted her application for coverage, Mrs. Dorsey signed a form acknowledging and accepting the applicability of this exclusionary clause (Exhibit D-7). This clause provided any medical expenses incurred during the first twenty-four months of coverage were not eligible for payment if the expenses were incurred in connection with an illness or injury for which the patient had received treatment, services or prescribed drugs during the twelve month period preceding the effective date of the coverage. In the present case the applicable period was October 1, 1981 through October 1, 1982.
On October 25, 1982, Mr. Dorsey was hospitalized at Rhodes Spedale Hospital in Plaquemine in order to undergo a treadmill test, which proved positive. Subsequently, Mr. Dorsey was transferred to Our Lady of the Lake Hospital in Baton Rouge where he underwent a quadruple coronary by-pass operation. He died on November 7, 1982. Thereafter, Mrs. Dorsey filed a claim with the Group Benefits Program for the medical expenses incurred by her husband from October 25 through November 7, 1982. Following a hearing on January 18, 1984, the Board of Trustees of the Group Benefits Program, defendant herein, denied her claim on the basis the expenses *737 were incurred for the treatment of a pre-existing condition. The total amount of medical expenses was stipulated by the parties to be $20,741.41, of which $19,160.00 would be eligible for payment if coverage had not been denied.
After exhausting all appropriate administrative procedures, Mrs. Dorsey filed the present suit requesting an award of medical expenses, as well as statutory penalties and attorney fees due to defendant's allegedly arbitrary refusal to pay her claim. Following a trial de novo on June 8, 1984, the trial court rendered judgment in favor of Mrs. Dorsey awarding her the stipulated amount of $19,160.00 for medical expenses. However, the court denied her claim for statutory penalties and attorney fees. The Group Benefits Program has taken a suspensive appeal from this judgment. Mrs. Dorsey answered the appeal, seeking reversal of the portion of the judgment denying her claim for penalties and attorney fees.
Defendant maintains the medical expenses claimed by Mrs. Dorsey are ineligible for payment because these expenses were incurred in the treatment of an illness which must be considered a pre-existing condition under the terms of the policy. The applicable provision of the policy provides as follows:[1]
"Hospital expenses and other medical expenses incurred during the first twenty-four (24) months that coverage for the employee and/or dependent is in force under this contract will not be considered as covered medical expenses if they are in connection with an illness or injury for which the Covered Person received treatment, services, or was prescribed drugs, during the twelve (12) month period immediately prior to the effective date of such coverage."
The insurer bears the burden of proving the applicability of such an exclusionary clause. Landry v. Louisiana Hosp. Service, Inc., 449 So.2d 584 (La.App. 1st Cir.1984). The evidence required to meet this burden of proof must be certain and decisive, leaving no room for speculation or assumption. Ferro v. Gebbia, 252 So.2d 545 (La.App. 4th Cir.1971), writ denied, 260 La. 16, 254 So.2d 618 (1971). Accordingly, in order to avoid liability, defendant is required to prove by a preponderance of the evidence the claimed expenses were rendered for the treatment of an illness for which Mr. Dorsey had previously been treated during the applicable twelve month period, i.e., October 1, 1981 through October 1, 1982. The trial court concluded defendant failed to meet this burden. We affirm.
Dr. Peter Dawson, the only physician to testify at trial, outlined Mr. Dorsey's history of medical treatment during the applicable period as follows. On July 10 and 17, 1982, Mr. Dorsey consulted Dr. Dawson relative to a sinus infection. His next visit was on July 24, 1982, at which time he complained of chest pains. Mr. Dorsey's blood pressure was found to be elevated on this date. Dr. Dawson made no definitive diagnosis, although he concluded Mr. Dorsey was suffering from angina, possibly due to hypertension. He prescribed procardia to relieve Mr. Dorsey's chest pains and lower his blood pressure, activan for his nerves and ferinsol for pain. At a follow-up visit on August 2, 1982 Mr. Dorsey's condition was improved. No other visit was scheduled. There was no evidence Mr. Dorsey received any other medical treatment or services during this period.
On October 25, 1982, which was after the effective date of coverage, Mr. Dorsey again consulted Dr. Dawson complaining of severe chest pains. It was at this time Dr. Dawson first suspected a serious problem and recommended Mr. Dorsey immediately enter the hospital to undergo a treadmill test. Upon the test proving positive, Dr. Dawson referred Mr. Dorsey to a cardiovascular surgeon. Dr. Dawson did not examine, treat, prescribe drugs or render any further medical services to Mr. Dorsey after this date. However, Dr. Dawson did follow Mr. Dorsey's treatment through contact *738 with the physicians attending him during his hospitalization. None of these physicians testified at trial.
The record contains few details as to the exact nature, cause or basis of the treatment received by Mr. Dorsey after he was referred by Dr. Dawson. The record reflects only that Mr. Dorsey underwent a quadruple coronary bypass, the purpose of which Dr. Dawson testified was to correct an occlusion of the arteries. Dr. Dawson never diagnosed this condition himself and specifically stated he did not treat Mr. Dorsey for it. He said his treatment of Mr. Dorsey had been for hypertension and angina, which can be attributable to several causes other than disease of the arteries.
As noted by the trial court, the record is devoid of any evidence clearly establishing the illness for which Dr. Dawson treated Mr. Dorsey was the same illness for which Mr. Dorsey received treatment from October 25 through November 7, 1982. The only evidence even suggesting it might have been the same illness in both instances was Dr. Dawson's testimony to the effect he suspected the visits of July 24 and October 25, 1982 were related and due to the same cause. However, defendant's burden of proof can not be met by merely establishing the illnesses were related. In order to avoid liability, defendant was required to prove Mr. Dorsey was treated for the same illness in both instances.[2] From the evidence introduced it is possible to reach this conclusion only through speculation and assumption, which is clearly insufficient to meet defendant's burden of proof.
In view of the lack of detailed information as to the basis and nature of Mr. Dorsey's treatment during the period for which medical expenses are claimed; and, considering Dr. Dawson's specific statement to the effect he had not treated Mr. Dorsey for this condition, we agree with the trial court's conclusion defendant failed to meet its burden of proof. Accordingly, we affirm the trial court judgment awarding $19,160.00 in medical expenses to Mrs. Dorsey.[3]
In an answer to this appeal, Mrs. Dorsey contends the trial court erred in denying her claim for statutory penalties and attorney fees. La.R.S. 22:657(A), provides as follows:
"A. All claims arising under the terms of health and accident contracts issued in this state, except as provided in Subsection B, shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent business man on his guard, exist. The insurer shall make payment at least every thirty days to the assured during that part of the period of his disability covered by the policy or contract of insurance during which the insured is entitled to such payments. Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney's *739 fees to be determined by the court. The district court of the parish where the insured lives or has his domicile shall have jurisdiction to try such cases."
Whether an insurer had "just and reasonable grounds" justifying its refusal to pay is a question of fact. Landry v. Louisiana Hosp. Services, Inc., supra. The trial court's finding on this issue should not be disturbed unless it is clearly wrong. Id.
The trial court concluded the Group Benefits Program did not act arbitrarily or capriciously in denying plaintiff's claim. In particular, the court noted the Group Benefits Program had actively pursued the claim by obtaining pertinent medical records. While we disagree with the conclusion ultimately drawn by defendant from these records, we can not say the trial court was clearly wrong in finding defendant had not acted arbitrarily or without reasonable grounds. Therefore, the portion of the trial court judgment denying statutory penalties and attorney fees is also affirmed.
Costs in the total amount of $367.65 are assessed against appellant.
AFFIRMED.
NOTES
[1] Article I, Sec. II(D)(1)(c).
[2] Defendant interprets the exclusionary clause as only requiring the illness be related to, rather than the same as the previous illness. However, our reading of the contract leads us to the conclusion the illness must be the same in order to exclude coverage. The determinative words are "an illness ... for which the Covered Person received treatment," etc. (Emphasis added.) In any event, if there is any ambiguity in this provision, it must be construed in favor of the insured. Bozeman v. Com. Land Title Ins. Co., 470 So.2d 465 (La.App. 1st Cir.1985), writ denied, 475 So.2d 359 (1985).
[3] In the alternative, defendant argues the medical expenses awarded included some charges which were ineligible for payment. We conclude defendant is estopped from making this argument in view of the joint stipulation made at trial that the total medical charges amounted to $20,741.41, of which $19,160.00 would have been eligible for payment had "benefits been payable."